UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| v. | )  No. 2:09-CR-42 |
| | ) |
| DANNY GIBSON | ) |

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's motion for compassionate release, [Doc. 101]. Citing underlying medical issues, Defendant, Danny Gibson, through counsel, asks the Court to release him from custody in light of the COVID-19 pandemic pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). [*Id.*]. The government has responded in opposition. [Doc. 105]. The matter is now ripe for review.

**I.**

In 2010, Defendant pled guilty to receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2). [Doc. 34]. The Court sentenced Defendant to 192 months' imprisonment followed by a lifetime term of supervised release. [Doc. 56]. Defendant is presently scheduled to be released from federal custody on January 4, 2023. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 26, 2020). Currently, Defendant is incarcerated at the Bureau of Prisons ("BOP") facility, Elkton FCI in Lisbon, Ohio. The most recent statistics from of the BOP report two hundred fifty-five federal inmates and two staff members are confirmed positive for COVID-19, nine federal inmates have passed away from the virus, and eight hundred forty-eight federal inmates and fifty-one staff members have recovered from the virus at Elkton FCI. *See* COVID-19, Coronavirus, BOP (July 26, 2020) https://www.bop.gov/coronavirus/

In support of his motion, Defendant avers that he suffers from lymph node infections, which render him immunocompromised. [Doc. 101 at 13]. In addition, Defendant, who is fifty-five years old, tested positive for COVID-19 on April 11, 2020, [Doc. 107 at 4], and was placed in an isolation unit the following day to receive care from his prison's medical staff, [*Id.* at 2]. Defendant was prescribed 200 mg of

hydroxychloroquine sulfate twice daily and 250 mg of azithromycin once daily. [*Id.* at 3]. Defendant has been symptom free since April 25, 2020. [*Id.* at 2].

Defendant is currently housed at FCI Elkton and, in connection with a class action lawsuit brought by a number of inmates, United States District Judge James S. Gwin of the Northern District of Ohio recently entered a preliminary injunction directing FCI Elkton's warden and the Director of the Federal Bureau of Prisons to (1) evaluate certain inmates' eligibility for transfer out of Elkton by any means within two weeks; (2) transfer those deemed ineligible for compassionate release to other facilities utilizing certain measures to contain transmission of COVID-19; and (3) allow those transferred from Elkton to return only after certain conditions were met. *Wilson v. Williams*, No. 20-00794, 2020 WL 1940882 (N.D. Ohio, Apr. 22, 2020). The Court has been informed that Defendant has been determined by the BOP as an at-risk inmate that must be removed from Elkton. [*See* Doc. 101 at 13].

## II.

Once a sentence has been imposed, it generally cannot be modified. *Dillon v. United States*, 560 U.S. 817, 819 (2010) (citing 18 U.S.C. § 3582(c)); *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Under 18 U.S.C. § 3582(c)(1)(A)(i) district courts can consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." As relevant here, Section 3582(c)(1)(A)(i) provides that the court may reduce an imposed term of imprisonment "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier," after considering the applicable factors set forth in section 3553(a), if it finds that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." "Accordingly, in order to be entitled to relief under the statute, [the Defendant] must both meet the exhaustion requirement and demonstrate that 'extraordinary and compelling reasons' warrant a reduction of his sentence." *United States v. Smith*, No. 3:16-CR-48 (MPS), 2020 WL 1903160, at *2 (D. Conn. Apr. 17, 2020).

In regard to exhaustion, Defendant argues that this "Court should excuse compliance with the normal exhaustion rule in light of the documented and serious national emergency." [Doc. 341 at 4]. In doing so, Defendant acknowledges that he has not met the normal exhaustion requirements, and that nonetheless argues that the Court can waive the exhaustion requirements under the exigent circumstances created by the COVID-19 pandemic. Here, nothing in the record indicates that Defendant has exhausted his administrative remedies. *See United States v. Alam*, 960 F.3d 831, 835 (6th Cir. 2020). In *United States v. Alam*, the Sixth Circuit held that "[i]f the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court . . . by moving for it on his own behalf," but "[t]o do that, he must 'fully exhaust[] all administrative rights to appeal' with the prison or wait 30 days after his first request to the prison." 960 F.3d at 833-34 (quoting 18 U.S.C. § 3582(c)(1)(A)). It is the Defendant's "burden to show he has exhausted his administrative remedies and is entitled to compassionate release." *United States v. McDonald*, No. 94-CR-20256-1, 2020 WL 3166741, at *3 (W.D. Tenn. June 8, 2020) (citing *United States v. Ebbers*, No. 02-CR-1144, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020); *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

Defendant had not completed the administrative appeal process, and as such, has not properly exhausted his administrative remedies as required by *Alam*. Although Defendant has petitioned the Warden for relief, nothing in the record indicates that Defendant has appealed the Warden's denial, thereby, exhausting his administrative remedies. [*See* Docs. 105-1, 105-2]. Accordingly, the Court concludes that it is without authority under § 3582(c)(1)(A) to address the instant motion.

Alternatively, Section 12003 of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), presently and temporarily provides for expanded prisoner home confinement. However, the CARES Act places decision making authority solely within the discretion of the Attorney General and the Director of the Bureau of Prisons *See* Atty. Gen. William Barr, Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf; Atty. Gen. William Barr, Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic (Mar. 26,

2020), https://www.bop.gov/resources/news/pdfs/20200405_covid-19_home_confinement.pdf; 18 U.S.C. § 3624(c)(2); CARES Act, Pub.L. 116-136, Div. B, Title II, § 12003(b)(2) ("the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate."). While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court lacks jurisdiction to order home detention under this provision. *United States v. Engleson*, No. 13-CR-340-3(RJS), 2020 WL 1821797, at *1 (S.D.N.Y. Apr. 10, 2020) ("while court can recommend, [the] ultimate decision whether to release inmate to home confinement rests with BOP"). *See United States v. Read-Forbes*, No. CR 12-20099-01-KHV, 2020 WL 1888856, *5 (D. Kan. Apr. 16, 2020); *see also United States v. Campbell*, No. 3:12-CR-24 (CAR), 2014 WL 12911957, *1 (M.D. Ga. Sept. 17, 2014) ("Defendant's request to be placed on home confinement lies within the sole discretion of the BOP, and any order from this Court would merely be a recommendation to the BOP to consider placing Defendant in home confinement." (citing 18 U.S.C. § 3621(b))). Accordingly, the Court lacks the authority to grant such relief.

The Court does not discount the effects a pandemic has on all the prison population. Incarcerated individuals face an even greater risk of transmission, given the conditions frequently present in correctional and detention facilities, including crowding, delays in medical evaluation and treatment, rationed access to soap, water, and clean laundry, insufficient infection-control expertise, and involuntary interaction with purportedly asymptomatic individuals who rotate shifts or visit the local facilities. *See United States v. Kennedy*, No. 18-20315, 2020 WL 1493481, at *2 (E.D. Mich. Mar. 27, 2020). As prison officials are beginning to recognize around the country, even the most stringent precautionary measures- short of limiting the detained population itself -simply cannot protect detainees from the extremely high risk of contracting this unique and deadly disease. The Court recognizes the unique confluence of serious health issues and other risk factors facing Defendant place him at a substantially heightened risk of dangerous complications.

4

But in light of the fact that Defendant has already contracted the virus—an occurrence that, in the Court's view, moots his motion—the Court cannot conclude that he will suffer irreparable harm by remaining in prison, where, he has been in isolation and received medical care. *See United States v. Davis*, No. 06-20020-002, 2020 WL 2395977, at *2 (C.D. Ill. May 12, 2020) (concluding that the prisoner's motion for compassionate release was moot because he had already contracted COVID-19 and was receiving healthcare in prison); *United States v. Bogdanoff*, No. 12-CR-0190-1, 2020 WL 2307315, at *5 (E.D. Pa. May 8, 2020) (stating that the court could not conclude that a seventy-three-year-old prisoner "would be made safer by his immediate transfer to home confinement" because he had already contracted COVID-19 and was receiving treatment in prison (citation omitted)); *United States v. Russo*, ___ F. Supp. 3d ___, Crim. No. 16-441 (LJL), 2020 WL 1862294, at *8 (S.D.N.Y. Apr. 14, 2020) (denying a motion for compassionate release because the at-risk prisoner had already contracted COVID-19 and was receiving regular evaluation and care from the Bureau of Prisons).

Also, the Court, in these unprecedented times, would be remiss if it did not consider the danger that Defendant, as a carrier of COVID-19, would pose to the public if the Court were to order his release. *See* USSG § 1B1.13(2) (stating that a court may, after weighing § 3553(a)'s factors, order a defendant's compassionate release only if it determines that the "defendant is not a danger to the safety of any other person or to the community"). In recognition of the Center of Disease Control's guidelines, the Court is not at all inclined to release Defendant, who ought to remain in strict isolation. *See Davis*, 2020 WL 2395977 at *2 ("[T]he Court finds that releasing [the defendant] into the community while he has COVID-19 is a danger to the safety of the community."); *United States v. Avenatti*, No. 8:19-CR-00061, at 2 (C.D. Cal. Apr. 10, 2020), Doc. No. 140 (PACER) (granting the defendant's temporary release to home confinement but with the caveat that "[i]f the defendant is found to be exhibiting symptoms consistent with COVID- 19 or is confirmed to have COVID-19, the defendant shall not be released to the public because of the danger the defendant poses to the community").

5

## III.

The Court sympathizes with the Defendant's concerns, but it lacks authority to consider the present motion as explained herein. The motion must therefore be denied. It is HEREBY ORDERED that Defendant's motion for compassionate release, [Doc. 101], is DENIED. The United States' Motion to Seal, [Doc. 106], is **GRANTED**.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
